# SETTLEMENT AGREEMENT

This Settlement Agreement (Agreement) is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General (OIG-HHS) of the Department of Health and Human Services (HHS), (collectively, the "United States"), Iredell Physician Network, LLC (IPN), and Jill Reid (Relator) (hereafter collectively referred to as "the Parties"), through their authorized representatives.

## RECITALS

A. IPN is a North Carolina limited liability company with its principal office located at 577 Brookdale Drive, Statesville, North Carolina. IPN is a wholly-owned subsidiary of Iredell Health System, which operates a hospital and multiple medical practices in North Carolina.

B. On June 9, 2020, Jill Reid filed a *qui tam* action in the United States District Court for the Western District of North Carolina captioned *United States ex rel. Jill Reid v. Iredell Physician Network, LLC and Ruby Grimm, M.D.,* Case No. 5:20-cv-73, pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the Civil Action). Relator alleged that (a) IPN knowingly billed Medicare for Dr. Grimm's evaluation and management (E&M) services that were not supported by the medical record, which caused the submission of false claims to the Medicare program, and (b) following an internal audit, IPN determined amounts were owed in repayment for Dr. Grimm's E&M services, but knowingly avoided its obligation to repay those monies to the Medicare program; all in violation of the False Claims Act, 31 U.S.C. §§ 3729-3733.

C. The United States contends that IPN submitted or caused to be submitted claims for payment to the Medicare Program, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395lll ("Medicare") and the Medicaid Program, 42 U.S.C. §§ 1396-1396w-5 ("Medicaid").

D. The United States contends that it has certain civil claims against IPN arising from its knowing retention of overpayments received as a result of IPN's billing for E&M services

performed by Dr. Grimm, during the period from January 1, 2016 through December 31, 2019, which were not supported by the medical record. That conduct is referred to below as the "Covered Conduct."

E. This Settlement Agreement is neither an admission of liability by IPN nor a concession by the United States that its claims are not well founded.

F. Relator claims entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement and to Relator's reasonable expenses, attorneys' fees and costs.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

TERMS AND CONDITIONS

1. IPN shall pay to the United States ONE HUNDRED THIRTY-EIGHT THOUSAND SIX HUNDRED AND TWELVE DOLLARS ($138,612) (Settlement Amount), and interest on the Settlement Amount at a rate of three percent (3%) per annum from the Effective Date of this Agreement, of which SIXTY-NINE THOUSAND THREE HUNDRED AND SIX DOLLARS ($69,306) is restitution, no later than 30 days after the Effective Date of this Agreement by electronic funds transfer pursuant to written instructions to be provided by the Office of the United States Attorney for the Western District of North Carolina.

2. Conditioned upon the United States receiving the Settlement Amount and as soon as feasible after receipt, the United States shall pay TWENTY-SIX THOUSAND THREE HUNDRED AND THIRTY-SIX DOLLARS and TWENTY-EIGHT CENTS ($26,336.28) to Relator by electronic funds transfer (Relator's Share).

3. IPN agrees to make payment of FIFTY THOUSAND ($50,000.00) to Relator pursuant to 31 U.S.C. § 3730(d)(1) for expenses or attorneys' fees and costs. This single payment

is due no later than 30 days after the Effective Date of this Agreement by electronic funds transfer pursuant to written instructions to be provided by Relator's counsel as soon as practicable. Upon receipt of full payment, Relator, for herself and for her heirs, successors, attorneys, agents, and assigns, releases IPN and its officers, agents, and employees, from any further and additional liability to Relator with the exception of her individual claim for retaliation and/or wrongful discharge, which she specifically reserves, and over which the Court shall retain jurisdiction.

4. Subject to the exceptions in Paragraph 6 (concerning reserved claims) below, and upon the United States' receipt of the Settlement Amount, plus interest due under Paragraph 1, the United States releases IPN together with its current and former parent corporations, direct and indirect subsidiaries, brother or sister corporations, divisions, current or former corporate owners, and the corporate successors and assigns of any of them from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of payment by mistake, unjust enrichment, and fraud.

5. Subject to the exceptions in Paragraph 6 below, and upon the United States' receipt of the Settlement Amount, plus interest due under Paragraph 1, Relator, for herself and for her heirs, successors, attorneys, agents, and assigns, releases IPN from any civil monetary claim the Relator has on behalf of the United States for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733.

6. Notwithstanding the releases given in Paragraph 4 of this Agreement, or any other term of this Agreement, the following claims and rights of the United States are specifically reserved and are not released:

    a. Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

3
Case 5:20-cv-00073-KDB-DCK   Document 22-1   Filed 10/04/22   Page 3 of 11

b. Any criminal liability;

c. Except as explicitly stated in this Agreement, any administrative liability or enforcement right, including mandatory or permissive exclusion from Federal health care programs;

d. Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

e. Any liability based upon obligations created by this Agreement; and

f. Any liability of individuals.

7. Relator and her heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). Conditioned upon Relator's receipt of the Relator's Share, Relator and her heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States, its agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action or under 31 U.S.C. § 3730, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action.

8. IPN waives and shall not assert any defenses IPN may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

9. IPN fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that IPN has asserted, could have asserted, or may assert in the

future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct or the United States' investigation or prosecution thereof.

10. The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (e.g., Medicare Administrative Contractor, fiscal intermediary, carrier) or any state payer, related to the Covered Conduct; and IPN agrees not to resubmit to any Medicare contractor or any state payer any previously denied claims related to the Covered Conduct, agrees not to appeal any such denials of claims, and agrees to withdraw any such pending appeals.

11. IPN agrees to the following:

    a. <u>Unallowable Costs Defined</u>: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395lll and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of IPN, its present or former officers, directors, employees, shareholders, and agents in connection with:

        (1) the matters covered by this Agreement;

        (2) the United States' audit(s) and civil investigation(s) of the matters covered by this Agreement;

        (3) IPN's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in connection with the matters covered by this Agreement (including attorneys' fees);

        (4) the negotiation and performance of this Agreement; and

        (5) the payment IPN makes to the United States pursuant to this Agreement and any payments that IPN may make to Relator, including costs and attorneys' fees,

are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program (FEHBP) (hereinafter referred to as Unallowable Costs).

  b. <u>Future Treatment of Unallowable Costs</u>: Unallowable Costs shall be separately determined and accounted for by IPN, and IPN shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by IPN or any of its subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

  c. <u>Treatment of Unallowable Costs Previously Submitted for Payment</u>: IPN further agrees that within 90 days of the Effective Date of this Agreement it shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by IPN or any of its subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs. IPN agrees that the United States, at a minimum, shall be entitled to recoup from IPN any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

 Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United

States reserves its rights to disagree with any calculations submitted by IPN or any of its subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this paragraph) on IPN or any of its subsidiaries or affiliates' cost reports, cost statements, or information reports.

      d.    Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine IPN's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this paragraph.

12.    This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 14 (waiver for beneficiaries paragraph), below.

13.    IPN agrees that it waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

14.    Upon receipt of the respective payments described in Paragraphs 1 and 3, above, the United States and Relator shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal dismissing all claims brought by Relator on behalf of the United States, pursuant to Rule 41(a)(1). Relator does not dismiss, and instead reserves, her individual claim for retaliation and/or wrongful discharge.

15.    Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

16.    Each party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

17. This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Western District of North Carolina. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

18. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

19. The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

20. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

21. This Agreement is binding on IPN's successors, transferees, heirs, and assigns.

22. This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

23. All Parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

24. This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

## THE UNITED STATES OF AMERICA

DATED: _____  BY: _____
JULIA WOOD (Digitally signed by JULIA WOOD, Date: 2022.09.28 11:24:39 -04'00')
DENA J. KING
UNITED STATES ATTORNEY

JULIA K. WOOD
KATHERINE T. ARMSTRONG
Assistant United States Attorneys
Western District of North Carolina

DATED: _____  BY: _____
LISA RE (Digitally signed by LISA RE, Date: 2022.09.28 10:38:00 -04'00')
LISA M. RE
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services

## IREDELL PHYSICIAN NETWORK, LLC - DEFENDANT

DATED: _____  BY: _____
JOHN G. GREEN
President, Iredell Health System

DATED: _____  BY: _____
BENJAMIN P. FRYER
FordHarrison LLP
Counsel for Iredell Physician Network, LLC

## JILL REID - RELATOR

DATED: _____  BY: _____
JILL REID
Relator

DATED: _____  BY: _____
BENJAMIN LIN
Brown, LLC
Counsel for Relator Jill Reid

## THE UNITED STATES OF AMERICA

DATED: _____    BY: _____
                        DENA J. KING
                        UNITED STATES ATTORNEY

                        JULIA K. WOOD
                        KATHERINE T. ARMSTRONG
                        Assistant United States Attorneys
                        Western District of North Carolina

DATED: _____    BY: _____
                        LISA M. RE
                        Assistant Inspector General for Legal Affairs
                        Office of Counsel to the Inspector General
                        Office of Inspector General
                        United States Department of Health and Human Services

## IREDELL PHYSICIAN NETWORK, LLC - DEFENDANT

DATED: 9/28/22      BY: _____
                        JOHN G. GREEN
                        President, Iredell Health System

DATED: 9/28/2022    BY: _____
                        BENJAMIN P. FRYER
                        FordHarrison LLP
                        Counsel for Iredell Physician Network, LLC

## JILL REID - RELATOR

DATED: _____    BY: _____
                        JILL REID
                        Relator

DATED: _____    BY: _____
                        BENJAMIN LIN
                        Brown, LLC
                        Counsel for Relator Jill Reid

9

## THE UNITED STATES OF AMERICA

DATED: _____  BY: _____
DENA J. KING
UNITED STATES ATTORNEY

JULIA K. WOOD
KATHERINE T. ARMSTRONG
Assistant United States Attorneys
Western District of North Carolina

DATED: _____  BY: _____
LISA M. RE
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services

## IREDELL PHYSICIAN NETWORK, LLC - DEFENDANT

DATED: _____  BY: _____
JOHN G. GREEN
President, Iredell Health System

DATED: _____  BY: _____
BENJAMIN P. FRYER
FordHarrison LLP
Counsel for Iredell Physician Network, LLC

## JILL REID - RELATOR

DATED: 10 / 04 / 2022  BY: *Jill Reid*
JILL REID
Relator

DATED: 10 / 04 / 2022  BY: _____
BENJAMIN LIN
Brown, LLC
Counsel for Relator Jill Reid